**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SONRAI SYSTEMS, LLC, and ADVANCED CUSTOM ENGINEERED SYSTEMS & EQUIPMENT CO., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16 C 9404 |
| AMCS GROUP INC., LAKESHORE RECYCLING SYSTEMS, LLC, and REHRIG PACIFIC COMPANY, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Sonrai Systems, LLC and Advanced Custom Engineering Systems & Equipment Co. (collectively, "Sonrai") hold the patent rights to an improved method of municipal garbage collection. In the patented method, a permit is issued for a waste receptacle in the form of a Radio Frequency Identification ("RFID") tag, which can be read by a mobile device to determine on the spot whether the receptacle's contents comply with the permit. The type or use of the permit is not limited by the patented method; the patent itself suggests that the method could be used to check that the permit has not expired, to cite owners for disposing of the wrong type of waste in the container, or to alert the user that the container has previous infractions (such as overfilling) that now require a citation. In this suit, Sonrai asserts another use of the patented method, which is to institute a payment program for municipal waste collection based on the volume of waste discarded, sometimes known as a "pay as you throw" program, rather than a traditional flat fee. Sonrai sells this last method to waste hauling contractors.

Lakeshore Recycling Systems, Inc. ("Lakeshore") provides residential waste hauling programs to municipalities. In a successful effort to win the waste hauling contract of Highland Park, Illinois in 2015, Lakeshore purchased an RFID system from Sonrai and used it to

implement a "pay as you throw" program. When it came time for the next contract proposal, however, Lakeshore turned to a different subcontractor, AMCS Group, Inc. ("AMCS"), for an RFID system that performs—in Sonrai's estimation—the exact same patented function.

Sonrai sued Lakeshore, AMCS, and another of Lakeshore's subcontractors that provided the waste receptacles, Rehrig, Inc., for infringement of its patented method. Lakeshore and Rehrig have been voluntarily dismissed from the suit by agreement of the parties. AMCS now moves to dismiss the suit against it. For the reasons below, the motion is granted in part and denied in part.

## BACKGROUND

Lakeshore provides residential waste hauling services to municipalities. (Am. Compl. ¶ 28.) In an attempt to win the business of a new municipal client—Highland Park, Illinois— sometime in 2015, Lakeshore introduced a new technology as part of its proposal: Lakeshore would place Radio Frequency Identification ("RFID") tags on individual waste receptacles, which are capable of communicating information about the receptacle to a central database when the garbage hauler comes to collect the receptacle's contents. (Am. Compl. ¶¶ 34, 38–40.) Implementing this system allowed Lakeshore to institute a "pay as you throw" program based on the volume of waste that each resident discarded. (Am. Compl. ¶ 38.) Highland Park awarded the contract to Lakeshore; the precise date is not identified in the complaint. (Am. Compl. ¶ 41.)

Lakeshore did not create the RFID technology, and instead purchased the technology it used in Highland Park from Plaintiff Sonrai Systems, LLC. (Am. Compl. ¶¶ 33, 36.) Plaintiffs allege that the RFID technology Lakeshore purchased from Sonrai was instrumental in Lakeshore's receiving the Highland Park contract. (Am. Compl. ¶ 39.) When the City of Wheaton, Illinois opened bids for its waste hauling contract sometime in late 2015 or early 2016, Lakeshore saw the same opportunity, and invited Sonrai to give a presentation to Lakeshore on using Sonrai's RFID system for the Wheaton contract. (Am. Compl. ¶¶ 44–46.) On or near July 5, 2016, Lakeshore presented its bid to Wheaton with the Sonrai technology included; in

fact, Lakeshore used slides from the presentation Sonrai had made to Lakeshore in Lakeshore's presentation to Wheaton. (Am. Compl. ¶ 47.) But when Wheaton awarded Lakeshore the contract (again, the date is not specified), Lakeshore contracted with another vendor to provide the RFID technology: the co-defendant and movant, AMCS Group, Inc. (Am. Compl. ¶¶ 49–51.) A second subcontractor, and former defendant in this suit, Rehrig, Inc., provided the receptacles bearing the RFID tags. (Am. Compl. ¶ 52.)

Without providing specifics about when or how AMCS came to use RFID technology, Sonrai alleges that AMCS did so, and that its technology functions much like Sonrai's patented RFID system: AMCS provides RFID tags which attach to individual waste receptacles and communicate with a central database when the hauler picks up the receptacle. (Am. Compl. ¶ 103.) The AMCS RFID system has enabled a "pay as you throw" program in Wheaton, as Sonrai's did in Highland Park. (*See* Am. Compl. ¶ 137.)

Plaintiffs' first patent, U.S. Patent Number 8,146,798 (the "'798 patent"), was issued on April 3, 2012, and a continuation of the '798 patent followed in 2014, U.S. Patent Number 8,714,440 (the "'440 patent"). (Am. Compl. ¶¶ 22–26; '440 Patent, Ex. B to Am. Compl. [12-2], at [63].) The patents have identical specifications and just eight and seven claims, respectively, which are dependent on Claim 1 of each patent. (*See generally* '798 Patent, Ex. A to Am. Compl. [12-1]; *see generally also* '440 Patent.) Sonrai alleges that Lakeshore, AMCS, and Rehrig infringed Claim 1 of both patents, as well as several of the dependent claims.[1] Sonrai dismissed Lakeshore and Rehrig from the suit (Order (May 16, 2017) [44]; Order (June 13, 2017) [47]), leaving only AMCS, which has now moved to dismiss the case.

The claims of the two patents differ slightly, but those differences are not relevant to AMCS's motion to dismiss. Instead, the parties' arguments center broadly on whether Sonrai

---

[1]     Sonrai alleges that AMCS infringed Claims 1, 2, 3, 4, and 8 of the '798 patent (Am. Compl. ¶¶ 105, 123), and Claims 1, 2, 3, 4, and 7 of the '440 patent (Am. Compl. ¶ 136.)

has alleged sufficient facts to find that AMCS has infringed either patent. Because the claims of

the patents are very similar, only Claim 1 of the '798 patent is reproduced below:

> A method for a municipality to track the condition, pick-up, and general use of a large number of refuse containers among its citizens and businesses, the method comprising the steps of:
>
> requiring a permit for use of a multi-use waste receptacle wherein the multi-use waste receptacle is of a type filled and emptied on multiple occasions;
>
> issuing the permit in the form of a passive radio frequency identification tag having a unique identifier associated therewith to a permit applicant wherein the passive radio frequency identification tag includes means for attachment to the multi-use waste receptacle;
>
> associating the unique identifier with biographical information associated with the permit applicant;
>
> establishing a permit type associated with a type of waste to be deposited in the multi-use receptacle;
>
> associating the permit type with the permit;
>
> establishing an electronically accessible database external to the passive radio frequency identification tag comprising an association of a plurality of unique identifiers with biographical information associated with a corresponding plurality of permit applicants;
>
> requiring attachment of the passive radio frequency identification tag to a receptacle of the permit applicant wherein the passive radio frequency identification tag remains attached to the receptacle subsequent to several loadings and empties of refuse within the receptacle;
>
> making a determination whether use of a multi-use receptacle is in compliance or non-compliance based on the permit type associated with the permit attached thereto; and
>
> providing a handheld device for communicating information regarding the determination, the handheld device comprising a reader for reading the unique identifier from the passive radio frequency identification tag, a means for wireless communication with the database wherein the handheld device receives information from and transmits information to the electronically accessible database, and a display for displaying information to a user.

('798 Patent, col. 18 l. 46–col. 19 l. 19.)

Sonrai argues that AMCS directly infringed both patents, *see* 35 U.S.C. § 271(a), or

indirectly infringed the patents by inducing or contributing to Lakeshore's infringement of both

patents. 35 U.S.C. § 271(b), (c). As to direct infringement, Sonrai claims that the actions of

Lakeshore and AMCS together constitute infringement; that is, that Lakeshore practiced each

element of the claims with AMCS's assistance. (*See generally* Pls.' Opp. Br. to AMCS Mot. to

Dismiss [32].) AMCS disputes, however, that Sonrai has adequately alleged that either

Lakeshore or AMCS practices each element of the claimed method. As to Sonrai's indirect

infringement theories, AMCS contends Sonrai has not alleged that AMCS was on notice of Sonrai's patents, as required to pursue an indirect infringement claim. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). Finally, AMCS argues that it cannot be liable on a theory of contributory infringement because there are substantial, non-infringing uses of AMCS's RFID technology on AMCS's website; that website, AMCS contends, was incorporated into the complaint by the "incorporation-by-reference" doctrine and may accordingly be relied upon in this motion to dismiss. For the reasons below, the motion is granted in part and denied in part.

## DISCUSSION

In considering a motion to dismiss, the district court takes all well-pleaded facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In a patent infringement case, the claims of the patent are afforded "their broadest possible construction" on a motion to dismiss the complaint. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012). To survive a motion to dismiss, the complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This showing requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," instead, a plaintiff must provide a sufficient factual basis "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.      Direct infringement

Any person or entity who "makes, uses, offers to sell, or sells any patented invention, within the United States" infringes the patent. 35 U.S.C. § 271(a). A patent is not infringed unless each and every step of the patented claim is carried out by the defendant; each element is material to a finding of infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). Where a defendant carries out each step of the claimed method and

violates 35 U.S.C. § 271(a), the defendant has directly infringed the patent. *In re Bill of Lading*, 681 F.3d at 1333. Two or more actors can come together to directly infringe a patent when each practices some of the claimed steps, but a plaintiff proceeding on a joint infringement theory must show that the "acts of one party are attributable to the other such that a single entity is responsible for the infringement." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338 (Fed. Cir. 2016).

That showing can be made by two possible routes: either (1) the alleged infringer directs or controls others' performance of the necessary steps, or (2) the alleged infringer is engaged in a "joint enterprise" with others to perform the steps. *Id.* at 1339. An alleged infringer may direct or control the behavior of third parties through a traditional agency relationship or through "contracts with another to perform" steps of the claimed method. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015). In order to survive a motion to dismiss, a plaintiff must set forth factual allegations, not simply legal conclusions, that the alleged infringer controls the third party. *See Lyda*, 838 F.3d at 1340.

As an alternative to direct control of a third party, individuals or entities may be involved in a "joint enterprise" that directly infringes the patent. "[W]here two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor." *Akamai Techs.*, 797 F.3d at 1023. To pursue a joint enterprise theory, the patent holder must allege facts sufficient to substantiate four elements: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (AM. LAW. INST. 1979)).

Sonrai's complaint does not sufficiently allege direct infringement by AMCS under either theory because, taking the allegations of the complaint as true, AMCS does not exercise control over Lakeshore. AMCS is not alleged to have a principal-agent relationship with Lakeshore,

*Akamai Techs.*, 797 F.3d at 1023, nor does it exercise "an equal right to a voice in the direction of" a joint enterprise, *id.* The complaint's allegations may be generously read to allege direct infringement by Lakeshore; but with respect to AMCS, Sonrai alleges only that AMCS provided the technology to Lakeshore and instructed Lakeshore in how to use it.

### A.      Involvement of a municipality

The court must first address AMCS's argument that neither AMCS nor Lakeshore, separately or in conjunction, are alleged to perform all of the claims of the patented method because the patent requires a municipality to act. Claim 1's preamble in both patents describes "a method for a municipality to track . . . refuse containers . . . the method comprising the steps of," ('798 Patent col. 18, ll. 46–49; '440 Patent col. 18 ll. 40–43), followed in the body of the claim by, AMCS argues, some steps that only a municipality could perform: in the case of the '798 patent, "requiring a permit for use of a multi-use waste receptacle . . ." ('798 Patent col. 18 ll. 50–52); and in the case of the '440 patent, "permitting use of a multi-use waste receptacle among a plurality of residents of a municipality . . ." ('440 Patent col. 18 ll. 44–47.) There are no allegations in the complaint that a municipality performed either of those steps, which AMCS contends should be fatal to Sonrai's complaint.

A preamble which simply states an intended use for an invention does not typically limit a claim where the claim otherwise fully describes the claimed invention. *Marrin v. Griffin*, 599 F.3d 1290, 1294 (Fed. Cir. 2010) (finding that preamble describing invention as "A scratch-off label for permitting a user to write thereon without the use of a marking implement" did not limit the invention's uses to those that required writing on the label). Claim 1 of both patents coherently describes the invention without reference to the invention's purpose of enabling municipalities to manage garbage collection. Particularly on a motion to dismiss, where the court must give the claims their broadest possible construction, *In re Bill of Lading*, 681 F.3d at 1343, the court cannot conclude that the steps of the patented method require that a municipality perform the steps itself: nothing in the claim obviously prevents a third party from

performing the "requiring a permit" or "permitting the use of multi-use waste receptacles" steps on a municipality's behalf. It is reasonable to infer, from the allegations of the complaint, that the City of Wheaton was involved in, and is the beneficiary of, establishing the accused method of garbage collection. (*E.g.*, Am. Compl. ¶ 44 ("Lakeshore entered into negotiations with the City of Wheaton to secure a contract for the collection of waste . . . .").) The City of Wheaton may well require a permit and perform the claimed step of the patent. At the very least, the court can infer that Lakeshore performs these steps on Wheaton's behalf.

AMCS points out that the specification frequently refers to the municipality itself requiring a permit or permitting the use of waste receptacles. For instance, the specification notes: "Typically, one goes to the governing body or agency and fills out the necessary registration forms, pays the necessary fees, and receives the RFID tag 102 acting as a permit." ('798 Patent col. 12 ll. 4–6.) Furthermore, in one of the figures, the diagram begins with "Municipality requires owners/users of waste receptacles to apply and be issued a permit for using a waste receptacle." (*Id.* at Fig. 17.) But a preferred embodiment—or even a typical one—generally does not constitute a limitation on the claim. *See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011). Such arguments are appropriately reserved for claim construction; at this stage, when the claims must be broadly construed, the court does not agree that the preamble is limiting.

### B. Joint infringement by Lakeshore and AMCS

Sonrai alleges that both Lakeshore and AMCS have performed the claimed steps, resulting in direct infringement. The court agrees with AMCS, however, that the complaint does not sufficiently allege that AMCS alone infringed the patent. The complaint contains only the following formalistic allegation that AMCS itself requires a permit:

> AMCS contributes to and/or induces the infringement of the '798 Patent by instructing others to use and providing Lakeshore with a system that practices the step of "requiring a permit for use of a multi-use waste receptacle wherein the multi-use waste receptacle is of a type filled and emptied on multiple occasions", as stated on its website regarding the on-vehicle technology solution that "AMCS

on-vehicle technology has registered over 5 million bins and has been fitted on over 5,000 vehicles across local authorities and private recycling and waste management companies." (*www.amcsgroup.com/amcs-on-vehicle-technology*).

(Am. Compl. ¶ 113.)  These allegations do not satisfy the "requiring a permit" step of the '798 patent claim or the "permitting use of a multi-use waste receptacle" step of '440 patent claim. AMCS's act of *registering* bins does not perform the claimed step; the allegation contains no information about how AMCS's technology itself requires a permit for waste receptacles or permits the use of such receptacles.

Plaintiffs need not allege that AMCS directly practices the step in order to state a claim under a joint infringement or agency relationship theory, however.  The complaint does sufficiently allege that Lakeshore requires permits for use of multi-use waste receptacles and permits use of such receptacles.  Sonrai alleges the following about Lakeshore's practice of the "requiring a permit" step of the '798 patent:

> Lakeshore practices the step of "requiring a permit for use of a multi-use waste receptacle wherein the multi-use waste receptacle is of a type filled and emptied on multiple occasions", as stated on the City of Wheaton website (www.lrsrecycles.com): "Lakeshore Recycling Systems will use Radio Frequency Identification (RFID) tags attached to your garbage and recycling carts to wirelessly 'scan' the cart and then charge you a fee per pick-up based on the site of your cart."

(Am. Compl. ¶ 61; *see also* Am. Compl. ¶ 137 (alleging that AMCS provided the RFID system to Lakeshore and instructed Lakeshore on how to use it).)  Drawing an inference in favor of Sonrai, Lakeshore's RFID tags are required permits for the waste receptacles: the allegation implies that the tags are required in order to participate in Lakeshore's waste hauling program, conducted on the City of Wheaton's behalf.  The permits were issued in the form of RFID tags, as the steps of the patents require.  (*See* '798 Patent col. 18 ll. 53–55; '440 Patent col. 18 ll. 52–53.)  It is those tags that are scanned to determine compliance.  (*See* Am. Compl. ¶ 61; *see*

*also* Am. Compl. ¶ 145.)[2]  Sonrai also alleges that Lakeshore permits the use of waste receptacles, practicing the step of the '440 patent, because Lakeshore provides the receptacles, equipped with the RFID tags, to residents.  (Am. Compl. ¶ 85.)  The claimed step in the '440 patent, given the broadest reading, requires only that some entity or group—here, residents of Wheaton—are permitted to use multi-use waste receptacles.  Lakeshore's providing receptacles bearing the RFID tags/permits satisfies that step. (*See id.*)

There is an obstacle to finding AMCS liable for direct infringement on either joint infringement theory, however.  Under either the agency or joint enterprise theories of direct infringement, AMCS would have to exercise a degree of control over Lakeshore, the other entity allegedly involved in the infringement: for an agency theory, the authority of a principal, or for a joint enterprise, an equal voice in the direction of the enterprise.  *See Akamai Techs.*, 797 F.3d at 1023.  There are no allegations in the complaint that AMCS had any control over Lakeshore's use of its technology.  Sonrai, in its brief, points to the allegation that "AMCS . . . provided Lakeshore with an RFID tagging system . . . ." and that "AMCS instructed Lakeshore on how to use [the system] . . . ."  (Am. Compl. ¶¶ 104–05.)  But the fact that AMCS provided the technology to Lakeshore has no bearing over whether AMCS in fact exercised control over Lakeshore's use of the technology to infringe.  Sonrai has alleged only that AMCS provided technology to Lakeshore and instructed Lakeshore how to use it; nothing in those allegations implies that AMCS has the authority of a principal or has an equal voice in the conduct of Lakeshore's use of the technology.  Perhaps AMCS exercised more control than is alleged,

---

[2]    One step of the claims that AMCS implicitly concedes is sufficiently alleged is determining compliance or non-compliance with the permit.  ('798 Patent col. 19 ll. 7–10; '440 Patent col. 18 ll. 64–67.)  It is somewhat unclear, from the complaint, whether Sonrai believes that the "pay as you throw" program itself violates the patent, or whether Lakeshore simply has the ability to deny service to non-paying customers (thus, determining "compliance" with payment) as an incidental benefit of using the RFID technology.  (*See* Am. Compl. ¶ 145 (alleging that Lakeshore practices the "determining compliance" step because the "RFID tag technology provides for Lakeshore to deny service when the RFID tag is read by the equipment).)  Given that AMCS does not argue that the allegations fall short of establishing this step, the court need not resolve this ambiguity.

such as the right to revoke the technology if certain conditions were not met. Without such allegations, however, the fact that AMCS simply provided the technology falls short of the control over Lakeshore that is required to substantiate a joint infringement theory.

Sonrai cites *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.* in support of its agency theory, but the case is inapposite: there, the Federal Circuit affirmed a district court's holding that doctors directly infringed a patent where they instructed their patients to self-administer folic acid before beginning chemotherapy using the drug pemetrexed disodium; the two steps, when combined, infringed the method claims of plaintiff's patent. 845 F.3d 1357, 1364–65 (Fed. Cir. 2017). That holding does not suggest a different outcome here. As the Federal Circuit observed, the doctors were substantially in control of their patients' self-administration of the medications. *Id.* at 1365. Nothing in the complaint suggests that AMCS controlled how Lakeshore used the technology Lakeshore purchased from AMCS. Accordingly, the complaint has not stated a claim for direct infringement by AMCS under 35 U.S.C. § 271(a).

## II.    Indirect infringement

A person or entity may also infringe a patent by inducing another to do so, 35 U.S.C. § 271(b), or by contributing a component of the patented method to the direct infringer, 35 U.S.C. § 271(c). These methods of infringement are known as indirect infringement. *See In re Bill of Lading*, 681 F.3d at 1333. Unlike direct infringement, indirect infringement "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA*, 135 S. Ct. at 1926. A defendant can be liable for indirect infringement only where some other person or entity has directly infringed the patent; the other actor's direct infringement is what has been induced or contributed to. *See Limelight Networks*, 134 S. Ct. at 2117. Because Sonrai has sufficiently alleged that Lakeshore has directly infringed the patent by performing the claimed steps, the court must consider whether Sonrai's claims of indirect infringement on the part of AMCS are sufficiently supported by the allegations.

AMCS argues that Sonrai's indirect infringement claims must be dismissed because the allegations of the complaint do not establish that AMCS knew of the patents or Lakeshore's infringement. AMCS also contends that it cannot be liable for contributory infringement because there are substantial, non-infringing uses of its RFID system. The court considers those arguments below.

## A. Notice

AMCS argues that Sonrai has not adequately alleged that AMCS was aware of Sonrai's patents, or that AMCS knew that its RFID technology was being used to infringe the patents. To satisfy Rule 8 of the Federal Rules of Civil Procedure, a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. A complaint's conclusions must "be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Those factual allegations, however, need only "plausibly suggest[]" that the plaintiff has a claim for relief. *Twombly*, 550 U.S. at 557.

Sonrai's factual allegations about AMCS's notice of the patents are thin, but adequate. The complaint alleges, first, that AMCS "knew of the '440 and '798 patents prior to the time that Lakeshore selected AMCS and Rehrig to provide services with respect to the City of Wheaton" (Am. Compl. ¶ 56), and second, that "AMCS was provided actual notice [of each patent] . . . by Plaintiffs." (Am. Compl. ¶¶ 106, 131.) Sonrai does not describe precisely when, or how, Sonrai provided notice of the patents to AMCS. Nevertheless, the allegations are not solely legal conclusions; at the very least, Sonrai has alleged that it was Sonrai itself that notified AMCS of the patents at some point before Lakeshore selected AMCS as the subcontractor on the Wheaton contract. The conclusion that AMCS was on notice of the patents when it allegedly participated in the infringement is adequately supported by the allegation that Sonrai provided notice.

AMCS also argues that Sonrai has not alleged that AMCS knew that the RFID technology would be used to infringe the patents. To be liable on a theory of indirect

infringement, a defendant must not only know that the patent exists, but must also know that its actions were part of an infringing activity. *Commil USA*, 135 S. Ct. at 1927 (establishing specific knowledge requirement for inducement-to-infringe claim); *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (noting specific knowledge requirement for contributory infringement claim). At the motion to dismiss stage, the knowledge-of-infringement requirement is generally satisfied if the allegations establish that the defendant was on notice of the patent itself and subsequently assisted in practicing the infringing method. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, No. 2017-1096, ___ F.3d ___, 2017 WL 3908174, at *7–8 (Fed. Cir. Sept. 7, 2017). *Lifetime Industries* involved a patented window seal specially developed for recreational vehicles. *Id.* at *1. The district court dismissed an indirect infringement claim where the plaintiff alleged that the defendant, Trim-Lok, Inc., was aware of the patents and assisted in the manufacture of the accused product, but did not allege other facts that established Trim-Lok's knowledge that the activity was infringing. *See id.* at *7. The Federal Circuit reversed. It concluded that Plaintiff's allegations that Trim-Lok knew of the patent, and that the accused product was manufactured after Trim-Lok acquired that knowledge, supported the inference that "Trim-Lok also knew of the infringement." *Id.* In this case, similarly, Sonrai has alleged that AMCS knew of the patents and instructed Lakeshore on how to use the RFID technology in a way that practiced all the relevant elements of the claims. (Am. Compl. ¶¶ 112–22; 137–46.) At the motion to dismiss stage, when the court must accept all well-pleaded facts as true and draw reasonable inferences in Sonrai's favor, these allegations plausibly suggest that the AMCS knew that the part it took in Lakeshore's activity constituted infringement of Sonrai's patents.

AMCS cites two cases from the District of Delaware with contrary holdings; in each case, the court found that that the plaintiff had not met the knowledge requirement where the complaint lacked specific allegations that the defendant knew that the activity in which it participated constituted infringement. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, Civ. No. 13-2052-LPS, 2014 WL 4675316, at *3–4 (D. Del. Sept. 19, 2014) (finding allegation that

defendant saw presentations from the plaintiff identifying plaintiff's patents insufficient; complaint must contain allegations that defendant was put on notice that defendant's application of technology infringed patents); *Pragmatus AV, LLC v. Yahoo! Inc.*, Civ. No. 11–902–LPS–CJB, 2012 WL 6044793, at *15 (D. Del. Nov. 13, 2012) (finding allegation that plaintiff provided written notice of infringement, without describing substance of notice, insufficient to establish defendant's knowledge of infringement).

These cases pre-date *Lifetime Industries*, and the court declines to enforce the pleading standard they suggest. A plaintiff can only allege so much about a defendant's subjective knowledge of infringement before discovery is conducted. Of course, a detailed demand letter sent to an indirect infringer is a sound basis for alleging knowledge, but the Delaware courts' interpretation elevates such a letter from best practice to pleading requirement. Where a defendant first has notice of a patent and subsequently instructs another party on how to use the defendant's technology in a way that infringes the patent, it is reasonable for the court to infer that the defendant knew that its instructions to the third party resulted in an infringing use. *See Lifetime Industries*, 2017 WL 3908174, at *7. The court finds Sonrai's allegations contain a sufficient factual basis to infer that AMCS was on notice of the patents and that it was participating in an infringing activity. The evidence may ultimately defeat that inference, but Sonrai's notice allegations are adequate to survive a motion to dismiss.

### B.     Inducement

Sonrai's claim for inducement of patent infringement is sufficiently supported by the allegations of the complaint, as well. To be liable for inducing infringement, a defendant must have (1) known of the patents, (2) knowingly induced the infringing acts, and (3) possessed specific intent to encourage another's infringement of the patent. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). In this motion to dismiss, AMCS argues only that Sonrai failed to produce facts that plausibly demonstrate that AMCS was aware of the patents or of AMCS's inducement of infringement. (AMCS. Br. 12–13; AMCS Reply Br. 12.) The court has

already addressed these contentions; as discussed above, Sonrai adequately pleaded that AMCS had notice of the patents and of infringement when AMCS provided the technology to Lakeshore. Though AMCS does not contest that the third prong—specific intent to infringe—is met, the court notes that the complaint is sufficient to meet that prong as well: Sonrai alleges that AMCS provided Lakeshore with the RFID system for use on waste receptacles, and instructed Lakeshore on how to use the system to infringe the patents. (Am. Compl. ¶¶ 104–05.) The complaint explains in detail how the technology, as it is used by Lakeshore, infringes the patents. (Am. Compl. ¶¶ 112–22.) Thus—taking the complaint as true—AMCS had specific intent to infringe the patents.

### C. Contributory infringement

Sonrai also claims that AMCS contributed to infringement of the patents by providing Lakeshore with a necessary component of the infringing methods: the RFID system. A defendant may be liable for infringement of a patent even where she contributes only a part of the claimed system or method on a theory of "contributory infringement." 35 U.S.C. § 271(c). A plaintiff claiming contributory infringement must establish the following elements: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component [provided by the defendant] has no substantial noninfringing uses, and (4) that the component is a material part of the invention." *Fujitsu Ltd.*, 620 F.3d at 1326 (citing 35 U.S.C. § 271(c)). If the component (here, the RFID system provided by AMCS) that allegedly contributed to the infringing method has other substantial non-infringing uses, the defendant that produced that component cannot be liable for contributory infringement, even if the component can also be used to infringe the patent. *See In re Bill of Lading*, 681 F.3d at 1338 (plaintiff's allegations must establish that the component "can perform the infringing method and *only* the infringing method" (emphasis in original)). For instance, in *In re Bill of Lading*, the plaintiff alleged that a defendant company infringed the plaintiff's patented method, which allowed freight carriers to coordinate loads of goods by sending loading manifests to truck drivers at remote processing

terminals. *Id.* at 1329. The Federal Circuit affirmed the district court's dismissal of the plaintiff's contributory infringement claim because the defendant's accused technology—a process for scanning and transmitting lists of goods in the truck from the truck cab to the back office—could be used as a component of the patented process to infringe the patent, but could also be used to "speed billing and driver settlement, or scan proof of delivery documents." *Id.* at 1337–38. Despite the fact that the defendant's technology could be used by freight carriers to infringe the patented method, the technology's non-infringing uses defeated the plaintiff's contributory infringement claim. *Id.*

AMCS contends that AMCS's website—which Sonrai cited to identify the purportedly infringing uses (*e.g.*, Am. Compl. ¶ 113)—discloses several uses of the RFID system that do not infringe the patent.[3] The court agrees that AMCS's website discloses non-infringing uses. According to the website, the AMCS RFID system is also capable of providing proof of service to customers, tracking the precise number of receptacles lifted, and reporting waste hauling vehicle locations. (AMCS Website Excerpts, Ex. A to AMCS's Mem. in Supp. of Mot. to Dismiss [29-1].) Again, to infringe a patent, each and every element of the claim must be practiced by the infringer. *Limelight Networks*, 134 S. Ct. at 2117. One requirement shared by the '798 and '440 patents is "making a determination whether use of a multi-use receptacle is in compliance or non-compliance based on the permit type associated with the permit attached thereto . . . ." ('798 Patent col. 19 ll. 7–10; *see* '440 Patent, col. 18 ll. 64–67 (substituting "permit type" for "use

---

[3] The court agrees that AMCS may rely on the contents of its website under the "incorporation-by-reference" doctrine. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The doctrine permits a defendant to rely, in a motion to dismiss, on the contents of documents which the plaintiff references in, and which are central to, the complaint. *Id.* "In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Id.* at 690–91 (permitting defendant to rely, in motion to dismiss, on the contents of television programs referenced in the plaintiff's complaint). Other courts of this district have applied the incorporation-by-reference doctrine to websites relied upon by plaintiffs in their complaints. *See Pennington v. Travelex Currency Servs., Inc.*, 114 F. Supp. 3d 697, 703 n.7 (N.D. Ill. 2015) (in consumer fraud case, permitting defendant to refer to warning on website that plaintiff would not be charged favorable interbank exchange rate).

type" and "permit" for "passive radio frequency identification tag").) The court agrees that the proof-of-service, lift-tracking and vehicle-tracking functions do not infringe these claims, as those functions do not involve determining compliance with a permit or use type—those functions simply report the scanning of the tag itself.

Sonrai does not contest this point, and instead references the rule that, at the pleading stage, an allegation that there are no non-infringing uses is sufficient unless the complaint itself discloses otherwise. *See In re Bill of Lading*, 681 F.3d at 1339. As the court has noted, however, where a plaintiff relies on a document in a complaint, the defendant may cite other portions of that document in its motion to dismiss. *See Brownmark*, 682 F.3d at 690. Sonrai has no substantive response to the non-infringing uses that AMCS has identified. Accordingly, Sonrai's claim for contributory infringement is dismissed.

## CONCLUSION

AMCS's motion to dismiss [29] is granted in part and denied in part. Plaintiffs' joint infringement claim under 35 U.S.C. § 271(a) and contributory infringement theories under 35 U.S.C. § 271(c) are dismissed without prejudice. Plaintiffs are granted leave to file a second amended complaint within 21 days.

ENTER:

Dated: September 27, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

17